OPINION

This case concerns whether the Navajo Nation Labor Commission (Commission) is barred by a specific provision in the Navajo Nation Privacy Act (Act) from allowing public access to its records and to its hearings. The Court holds the Commission is not barred by that provision, and therefore denies the petition for a writ of prohibition.
I
The relevant facts are as follows. Real Party in Interest Evangeline Logg (Logg); filed a complaint with the Commission ab leging her employer, Navajo Nation De-: partment of Child Support Enforcement (CSE) violated the Navajo Preference in Employment Act (NPEA). During the Commission proceedings, CSE filed a mo-: tion to bar the press from evidentiary hearings in the case, based on several artfe des published in the Gallup Independent that revealed information from proposed exhibits and other documents filed by the *803 parties.[1] The Commission denied the motion. CSE filed a motion to vacate the denial due to the lack of a quorum, which the Commission granted. However, in a subsequent hearing (this time apparently with a quorum present), the Commission again refused to bar the press by denying a motion to reconsider filed by CSE. CSE then filed a petition for a writ of prohibition.
Based on the petition, this Court issued an alternative writ of prohibition. The alternative writ prohibited the Commission from disclosing any documents or allowing the public access to any hearings pending review of the case. The Court also invited the Commission and Logg to respond to the petition. Neither filed responses, and the Court therefore considers the petition based solely on CSE’s petition and accompanying exhibits.
II
The issue in this case is whether the Commission is barred by Section 84(B)(11) of the Navajo Nation Privacy Act from disclosing documents and allowing access to hearings.
III
The meaning of the Act is a matter of first impression for this Court.[2] The Act attempts to balance two competing values: (1) the importance of a transparent Navajo government that educates the people on its activities through unfettered access to government information, and (2) the proteetion of the privacy of individuals affected by the government. See 2 N.N.C. § 82 (2005). To accommodate these potentially conflicting values, the Act sets up procedures by which “the general public has a means to access records and information relating to the operation of the Navajo Nation while preserving the privacy interests of individuals and entities.” Id,
The Act attempts to regulate access to “records,” defined as certain documents and other physical objects held by government offices. See 2 N.N.C. § 83(E) (2005). It divides records into two main categories. The first category is “records that must be disclosed,” or “public records,” and the second is reeords that cannot be disclosed, or “protected records.” 2 N.N.C. §§ 84; 85 (2005). The clarity of the Act’s language ends at this point. The Act further divides “public records” into two apparently separate categories: records that are public “except to the extent they contain information expressly permitted to be treated as protected as provided for in 2 N.N.C. § 85,” and records that are “normally public, but to the extent that a record is expressly exempt from disclosure, access may be restricted under 2 N.N.C. § 85.” 2 N.N.C. §§ 84(A), (B) (2005).[3]
CSE relies on one provision in the Act to argue that the Commission must bar public access to documents and hearings in this ease. Section 84(B)(il) identifies certain records that are “normally public”: “[rjecords which would disclose informa *804 tion relating to formal charges or .-disciplinary action against a past or present governmental entity employee if: (a) The disciplinary action has been completed and all time periods for administrative appeal have expired; and (b) The formal charges were sustained.” 2 N.N.C. § 84(B)(11) (2005). CSE asserts that the Section establishes a three-part test and that any records that do not fit that test are not “normally public” records, but are automatically “protected records,” even if they are not listed in Section 85. As the Commission proceeding concerns an employment dispute, CSE contends, without explaining why, that the Commission’s records on this case relate to a “disciplinary action.” As the Commission has not issued a final judgment, CSE contends the action has not been completed. Finally, CSE contends that the Commission has not yet “sustained” the charges against Logg. CSE also contends that, because the records in this case are allegedly barred from public access, the hearings also must necessarily be closed to the public. The Court considers the access to Commission hearings and access to Commission records separately.
IV
The Court holds that the Act does not regulate access to Commission proceedings, regardless of whether Commission records are covered by the Section. As noted above, the Act regulates access to records, that is, physical objects held by the government. It nowhere purports to regulate whether hearings are open or closed to the public. Therefore, CSE’s claim that the Act requires closure of Commission proceedings fails. The Commission has discretion to adopt rules to govern its own proceedings, 15 N.N.C. § 616 (2005), and therefore may decide whether to close a particular hearing due to the revelation of potentially sensitive information through witness testimony. The Act does not bar that discretion. If the Navajo Nation Council wishes to control access to Commission hearings, It may do so by amending the Act or the Navajo Preference in Employment Act or by passing separate legislation. Cf. 9 N.N.C. §§ 1115(B), (C) (2005) (barring general public from certain Children’s Code hearings and barring and punishing disclosure of information from such hearings).
V
The Court also holds the Section does not bar access to Commission records. The Court approaches the issue in two ways. First, the Court holds that the list of “public records” in Section 84 of the Act cannot be used to bar access to other records by negative implication. Second, the Court holds that even if Section 84 barred other records by negative implication, Section 84(B)(11) does not apply to Commission records, but only to records concerning Navajo governmental employee grievances. Access to Commission records therefore are not covered by the Section at all, and the Section’s negative implication therefore does not bar access to them.
A
Section 84(B)(11) (Section) is unlike any of the other categories of “public records.” It allows access to government employee records only after disciplinary action is complete and only when the government employer prevails. The result is, despite the Act’s purported balance between government transparency and privacy, that if a government employer correctly disciplined an employee, personal privacy is apparently unimportant, as those records are freely accessible. On the other hand, if the government employer illegally disciplined an employee, an employee’s right to *805 privacy and/ or at the protection of government agencies from public scrutiny, disallows access. CSE provides no explanation and Court sees no clear rationale for such disparate treatment of government employees.
CSE’s assertion that employment records that do not fall within the Section are automatically “protected records” by negative implication is inconsistent with the plain language of the Act. The Act lists a total of twenty-two types of records that are public, but also states that “[t]he list of public records is not exhaustive and should not be used to limit access to records.” 2 N.N.C. § 84(C) (2005). The last phrase prohibits the use of Section 84 to bar access to non-listed records by negative implication. The Council intended that the list be inclusive, but not exclusive. In other words, the list is meant to illustrate types of records that are public, but not restrict “public records” to only those records the Council chose to list. While this open-ended approach may create confusion as to what records other than those listed are public, it nonetheless indicates a preference for maintaining a transparent government and bars CSE’s negative implication argument. As CSE relies solely on this negative implication argument, the Court denies the writ petition.
B
Even assuming the Section did bar other records by negative implication, the Court holds that the Section regulates disclosure of documents relating to internal Navajo Nation employment grievances, and not the records of Commission proceedings under the NPEA. The Section uses several terms that apply specifically to grievances under the Navajo Nation Personnel Policies. The Section applies to records that disclose information relating to “disciplinary action.” The term “disciplinary action” is a specifically defined term in the Personnel Policies Manual to describe actions negatively affecting government employees that trigger an employee’s right to file a grievance. See Navajo Nation Personnel Policies Manual, §§ XIV(A); XIX:[4] The NPEA refers to several types of negative action by an employer, but nowhere uses the term “disciplinary action.” See 15 N.N.C. § 604 (2005). Further, under the Section, records can be disclosed only if “all time periods for administrative appeal have expired.” The Personnel Policies set up a grievance procedure that includes an “appeal” to the Department of Personnel Management. Id., § XIV(C)(4). A complaint filed with the Commission by a government employee after the completion of the grievance process is not an “appeal,” as that term is used in the Section, but a new, independent action. Cf. Taylor v. Dilcon Community School, 6 Am. Tribal Law 688, 691, 2005 WL 6235953, *3 (Nav. Sup.Ct.2005) (filing of charge with ONLR only prerequisite to filing complaint with Commission, and employee need not exhaust grievance remedies provided by employer). Merely because the Commission proceeding arises out of an employment dispute between a Navajo Nation employee and her government employer is not enough to fall within the specific terms used by the Council. The Section simply does not apply to Commission records, and therefore its negative implication cannot bar access to them.
VI
Based on the above, the Court DENIES the petition for a writ of prohibition. This *806 decision does not mean that Commission records, or some portion of them, are not dosed to the public. There might be other provisions of the Act not asserted by CSE that protect information contained within the Commission’s records. However, as CSE did not assert, them, the Court cannot speculate and apply them to the records in this case. The Court urges the Commission to examine the Act and develop and apply, on its own, appropriate protections for individuals and entities as may be required by law.

. It is unclear from CSE's petition how the reporter got access to these documents, as CSE alleges that Logg did not disclose the documents, but does not allege the reporter got them directly from the Commission.

. It is unfortunate that the Court must decide such an important case with only one brief, and without the participation of the Commission.

.The distinction between records that are public and records that are “normally public” is obscured, as both categories include the caveat that they may nonetheless be barred from disclosure as "protected records” under Section 85. : .

. Interestingly, in this case the Department of Personnel Management denied Real Party in Interest Logg's grievance, ruling that CSE accepted her voluntary resignation, and thereby barring her from pursuing her complaint within the internal grievance system.