OPINION

This case concerns an appeal by the Navajo Department of Law Enforcement, of a May 26, 2009 Final Damages Order of the Navajo Nation Labor Commission (Commission) in which the Commission awarded a police officer back pay, attorney’s fees, restoration of leave hours; emotional damages; and further, imposed civil fines. A portion of the Commission’s judgment has already been enforced by the Window Rock District Court via a separate action (WR-CV-296-00). NDLE appeals only the Commission’s award of emotional damages and civil fines. The Court affirms in part and reverses in part.
I
PROCEDURAL HISTORY
On May 1, 2007, Veronica Wauneka (Ap-pellee) filed an Office of Navajo Labor Relations (ONLR) charge against her employer by the Navajo Department of Law Enforcement (Appellant). On November 27, 2007, the ONLR issued her a Notice of the Right to Proceed,. On December 19, 2007, Appellee filed a complaint with the Commission alleging that Appellant had created a hostile work environment and had harassed, humiliated and intimidated her. At the time the charge was filed, Appellee held the rank of police captain and had served 30 years on the police force. A hearing was held on April 14-15, 2008. At the conclusion of the Appellant’s presentation of its case, the Appellee made a motion for a directed verdict. The Commission granted the motion on July 18, 2008.
At a separate damages hearing on October 16, 2008, Appellee and her husband Sammy Wauneka, Jr. gave testimony that Appellee had sleeplessness, dreams of killing her supervisor, suicidal thoughts, and had withdrawn from normal activities. *21 Transcript of Dam,ages Hearing, October 16, 2008, p. 5. She stated that the sleeplessness affected her decision-making and her balance, and was the reason she tripped and fell in March, 2006, and she received workers’ compensation and took 4 weeks family medical leave due to the fall. M at 6-7, 15, 20. Considering herself a traditional person, Appellee sought prayers “a couple of times” from her father but only sought counseling at Fort Defiance Indian Health Service (IHS) a year after symptoms arose. Id. 7-8. Appellee provided no documentation, and could recall no diagnosis nor even the name of her IHS counselor although she was continuing to see her counselor monthly through the date of the hearing. Id. at 12-14.
Appellee also testified that she was under an IHS physician’s care for chest pains commencing January, 2006. Id. at 18. Appellee’s husband Sammy Wauneka corroborated and provided more information on this, testifying that Appellee had needed to undergo physical therapy to numb pain following her “heart attack.” Additionally, Appellee sought medical help for shoulder pain, help from a dietician for weight gain, and had headaches, backaches, and muscle aches; her vision was affected and also her food intake. Id. at 19, 27-28. Mr. Wauneka testified that he observed Appellee had trouble sleeping, and that she had withdrawn into herself, and this had affected their relationship and his breathing, and turned his hair white. Id. at 11, 25-28. Id. at 25-28. Appellee’s treating physician Dr. Glass had prescribed medication for the sleeplessness, and her counselor had suggested anti-depressant medication, but Appellee took neither because “I don’t like to take pills.” Id. at 9 and 18.
Appellee was never suspended nor terminated at work. Id. at 19. Appellee claimed “emotional damages” in the amount of $65,000, back pay for what the Appellee would have earned had she been given a higher performance rating on her job evaluation, and reinstatement of sick and annual leave hours used when she tripped and fell. Appellee stated that she either paid or agreed to pay her father $130 for prayers. There were no out of pocket expenses related to the counseling. Id. at 13,16.
On May 26, 2009, the Commission issued its decision awarding Appellee $9,911.20 in back pay based on a step increase that Appellee would have earned had she been given the step increase; $8,337.60 in attorney fees; restored to Appellee 8 hours sick leave and 72 hours annual leave; and $30,000 in emotional damages. Additionally, the Commission imposed $5,000 in civil fines sua sponte, payable by Appellant to the Navajo Nation Controller.
On June 8, 2009, Appellant filed with the Commission a petition to stay execution of the May 26, 2009 judgment. That same day, Appellant filed a Notice of Appeal to this Court, which we dismissed on July 14, 2009 due to non-receipt of the record. On August 12, 2009, we vacated the dismissal upon Appellant’s showing that it had timely filed a Request to Enlarge Time to Transmit Record with the Commission without also informing this Court. We also established the requirement that in future, this Court shall also be notified when such requests are made to the lower tribunal. Appellant submitted its brief on October 12, 2009 appealing only the emotional damages and civil fine. Appellee did not file a response.
On July 20, 2009 Appellee sought enforcement of the Commission’s May 26, 2009 judgment in the Window Rock District Court pursuant to 15 N.N.C, § 612(C), filing under No. WR-CV-296-09. However, Appellant having previously complied with all elements of the Commis *22 sion’s May 26, 2009 judgment except the issues on appeal, on November 30, 2009 Appellant filed with this Court a Petition to Stay Execution of the district court enforcement proceedings with regard to only the emotional damages and civil fine. On February 4, 2010, the district court ordered Appellant to pay any outstanding amounts to Appellee immediately. Appellant renewed its motion to stay execution, and we issued an order staying the district court’s order pending the outcome of this appeal on February 17, 2010.
Appellant next filed a Motion for Ruling on Appellate Record following which Ap-pellee did not file any response. On December 11, 2010, Appellee conceded that the Court should grant Appellant’s motion due to the absence of a response. On December 22, 2009, we granted Appellant’s motion. The Court now enters its decision based on the appellate record.
II
STANDARD OF REVIEW
Generally, the decisions of a quasi-judicial administrative agency are reviewed under an abuse of discretion standard. Manygoats v. Atkinson Trading Co, 8 Nav. R. 321, 336, 4 Am. Tribal Law 655 (Nav.Sup.Ct.2003). However, the Commission’s award of emotional damages involves a legal conclusion as to whether the claim is grounded in Appellant’s conduct under the proper legal standard, and further involves a legal measure of damages. As such, it is subject to de novo review “with no deference given to the Commission’s interpretation of the law.” Tso v. Navajo Housing Authority, 8 Nav. R. 548, 555, 5 Am. Tribal Law 438 (Nav.Sup.Ct.2004). Additionally, the Commission’s imposition of a civil fine involves the adoption and application of legal standards for an intentional violation of the Navajo Preference in Employment Act (NPEA), which will be reviewed de novo.
III
ISSUES
The issues in this case are (a) whether emotional damages were properly determined and awarded in a remedial order to cure a violation of the NPEA; and (b) whether a civil fine was properly imposed.
IV
EMOTIONAL DISTRESS REMEDIAL ORDERS
In Yazzie v. Navajo Sanitation, we found that 15 N.N.C. § 612(A)(1) of the NPEA did not restrict the power of the Commission to award specific types of remedies, as the provision set forth only examples of remedies “without limitation.” No. SC-CV-16-06, 7 Am. Tribal Law 543, 545-46 (Nav.Sup.Ct. July 11, 2007). The Commission’s authority to grant remedies is discretionary. See Tso v. Navajo Housing Authority, 8 Nav. R. 548, 559, 5 Am. Tribal Law 438 (Nav.Sup.Ct.2004). However, Yazzie did not open the door to tort claims of emotional damages. Pursuant to the NPEA, the Commission has jurisdiction to hear employee claims that the employer has failed to “provide employment conditions which are free of prejudice, intimidation and harassment.” 15 N.N.C. § 604(B)(9)(2005). The Council has thereby limited claims under the NPEA to “prejudice, intimidation and harassment.” We have stated that if the Council wishes the Commission to hear specific claims, it may amend the statute to clearly provide such jurisdiction. Yazzie, supra at 547, cf. In re Grievance of Wagner, No. SC-CV01-07, 7 Am. Tribal Law 528, 531-32 (Nav.Sup.Ct. May 14, 2007) (Council must clearly provide Office of Hearings and Appeals with power to invalidate election for irreg *23 ularities). There is no indication that the Council intended emotional harm or distress to be a separate and actionable claim in proceedings before the Commission.
There is scant written law on how emotional suffering may be determined whether as a tort claim or as a remedial order under the NPEA. The plain language of Section 612(A)(1) permits “remedial orders ... without limitation” when intended to “cure the violation (of the NPEA) within a reasonable period of time.” While it is a given that disputes in the area of employment will cause some anguish and suffering, for any remedial order to apply, section 612(A)(1) requires that the anguish arise from the NPEA violation itself, and not from disharmony and rupture due generally to a breakdown in the workplace relationship. Secondly, the remedy pursuant to section 612(A)(1) must not approach the anguish as a common law tort claim, in which damages are awarded on the basis of negligence, recklessness or intent. By its remedy, the Commission must not create a legal claim by implication that is otherwise not actionable under the NPEA. Additionally, the term “damages” in regards to a remedy which does not arise from a tort claim is inappropriate and should not be used.
15 N.N.C. § 612(A)(1) mandates that the Commission’s approach must be remedial with a goal to cure. We note that “remedy” is defined as “something that cures or relieves a disease or bodily disorder; a healing medicine, application, or treatment”; it is intended “to cure, relieve, or heal; to restore to the natural or proper condition.” [1] As we stated in Yazzie, the remedy shall be reasonably tied to making an employee whole depending on the circumstances of the ease. Yazzie, supra at 546. “Wholeness” here is entirely from the viewpoint of emotional health and well-being.
Finally, the remedy for emotional distress is one of several remedial orders which the Commission is empowered to grant in order to cure the violation “within a reasonable time.” Section 612(A)(1). This means that the timeframe for the remedy must not be open ended.
We now' turn to the record before us.
The record shows that the Commission accepted the testimony of Appellee and her husband that she experienced severe anguish, including sleeplessness and suicidal thoughts, during a specific period of time. However, the Commission made no finding that the NPEA violation had caused the asserted suffering; and furthermore, made no finding that the award was necessary to cure the violation. Additionally, the amount of the awrard ($30,000) was not reasonably tied to Appellee’s treatment of conditions that specifically arose from the NPEA violation. It is unclear from the record what caused Appel-lee’s emotional distress. The chest pains and heart attack occurred at the very beginning of the period of violation, and was not found to have been brought on by the NPEA violation. Physical pain arising from the heart attack required physical therapy and may have been a cause of sleeplessness, for which the treating physician had prescribed medication which was not taken.
This Court is troubled that while Appel-lee described herself as a traditional person, she nevertheless took immediate steps to seek medical help for her physical symptoms, but waited a year in seeking counseling for her emotional symptoms and did not take necessary medication, As a police officer, Appellee has a duty to the community to take the necessary steps to *24 ensure she is physically and mentally fit to serve. The community expects its senior police officers, especially, to take care of them properly and show the leadership that is associated with law enforcement as an institution. Cases of workplace disputes that create disharmony in law enforcement personnel have community implications and, therefore, the involved personnel must take the community into account in otherwise personal decisions. Here, the Commission placed no responsibility on Appellee to timely treat her own condition to ensure she was capable of performing.
Pursuant to 7 N.N.C. § 204, where our statutes or regulations are silent on matters in dispute before our courts, we shall utilize Diñé bi beena-haz’áanii. The principle of bee k’énd-zisdl\\’ applies to both the offender and the individual harmed in that both must face the consequences of his or her conduct and will be held accountable. In crafting, remedies for emotional distress, the Commission shall ensure that the parties are both accountable for their actions.
Finally, the Commission’s remedy must be specific to the cure, and targeted toward wholeness of the individual’s emotional health and well-being. Here, Appel-lee stated there were no out-of-pocket expenses for her medical treatment and counseling, not even travel expenses as IHS was close to her home. As she identified herself as a traditional person, spirituality in terms of bringing her back to harmony and balance may warrant prayers and ceremonies. There was talk of payment for prayers, but no testimony, affidavit or other document provided from spiritual providers regarding such payments. Competent evidence is normally required in the damages phase of any proceeding, and the requirement is no different when an award is made as a remedial order. See Chavez v. Tome, 5 Nav. R. 183, 190 (Nav.Ct.App.1987) (the general rule (is) that the award not be excessive, and that it be supported by competent evidence). Finally, if parties are willing to meet in a peacemaking setting, the Commission may include such a remedy calculated to achieve balance and harmony for the parties, and require voluntary talking out and apologies in such a setting with the proviso that statements made therein may not be used in any subsequent litigation.
The record shows that the Commission made no specific finding that any emotional suffering arose from the NPEA violation. Additionally, the award was neither accounted for by competent evidence nor reasonably tied to making Appellee whole in terms of emotional health and well-being. The Commission strayed into treating the remedy as if a tort claim had been filed. For these above reasons, the Commission’s award of $30,000 in emotional damages is reversed.
V
CIVIL FINE
15 N.N.C. § 612(A)(1) provides that $500 in civil fines may be imposed by the Commission as a “remedial order” upon a finding of an intentional violation of the NPEA. The plain language of the provision makes the Council’s intent clear. The fine is neither a sanction nor penalty, but is a remedy. The amount of the fine being capped at a relatively nominal amount of $500. and tied to intentional violations, it is plainly a remedial measure in regards to the intentional practice and is not “punitive or exemplary damages” as prohibited by 1 N.N.C. § 554(F)(3) of the Sovereign Immunity Act.
The Commission has determined that there is intentionality. As only the record of the damages phase of the proceedings has been transmitted to this Court, we are *25 unable to assess the Commission’s findings of fact concerning intention and therefore, will not disturb the Commission’s determination of that the violation was intentional.
VI
CONCLUSION
Based on the above, the Court REVERSES the Commission’s award of $30,000 in emotional damages, and AFFIRMS the Commission’s imposition of $500 in civil fines. The Court further LIFTS the stay in the Window Rock District Court for further disposition consistent with this opinion.

ORDER

Appellant has asked the Court to reconsider its affirmation of the civil fine in this case by filing a Motion to Reconsider the Affirmation of a Civil Fine or, In the Alternative, Motion to Clarify on March 2, 2011.
For the reasons set forth in the February 10, 2011 opinion in this case, we deny Appellant’s motion for reconsideration, but clarify and correct the section concerning civil fines at pages 24-25 of our opinion.
In permitting civil fines to be imposed as a remedial order upon a finding of an intentional violation of the NPEA, 15 N.N.C. § 612(A)(1) by its own language does not contemplate punitive amounts. We interpret this to mean that a fine must not be excessive given a competently accounted for compensatory scheme. In this case, the Commission awarded Appellee $9,911.20 in back pay plus $8,337.60 in attorney fees. The Commission’s fine is well within the compensatory scheme in this case, and this Court further considered the fine “relatively” nominal given the scheme.
Two corrections are in order. In its opinion, this Court incorrectly stated inter alia that 15 N.N.C. § 612(A)(1) “provides that $500 in civil fines may be imposed” and incorrectly affirmed the amount of the Navajo Nation Labor Commission’s imposition of civil fines. Op. at 24. The amount of the fine was a typo and is hereby corrected to read “$5,000.” Additionally, the word “provides” in the above sentence is hereby replaced with “permits.”
The opinion dated February 15, 2011 is HEREBY reissued with the above corrections effective February 10, 2011, the date of the first opinion.
SO ORDERED.

. http://dictionary.reference.com based on the Random House Dictionary (2001).